**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| **JANE DOE I,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **CITY VIEW INDEPENDENT SCHOOL** | § | |
| **DISTRICT, a Texas Independent School** | § | |
| **District and ANTHONY RAY BUSHONG;** | § | **CIVIL ACTION NO. 7:23-cv-0032** |
| **Individually and as an Employee of City** | § | |
| **View Independent School District; DARYL** | § | **TRIAL BY JURY DEMAND** |
| **FRAZIER, Individually and as an Employee** | § | |
| **of City View Independent School District;** | § | |
| **RUDY GLYNN HAWKINS, Jr.,** | § | |
| **Individually and as an Employee of City** | § | |
| **View Independent School District and** | § | |
| **ROBERT EVAN MORRIS, Deceased,** | § | |
| **Individually and as a former Employee of** | § | |
| **City View Independent School District.** | § | |
| | § | |
| **Defendants.** | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

COMES NOW, JANE DOE I[1] (a pseudonym) and hereinafter either "Plaintiff I or "Doe I",

by and through her attorneys of record, JUSTIN HILL of The Hill Law Firm, PLLC, and MARTIN

J. CIRKIEL, with The Cirkiel Law Group, P.C., files this her *Original Complaint* against Defendants

CITY VIEW INDEPENDENT SCHOOL DISTRICT, a Texas Independent School District

(hereinafter referred to as "City View ISD" or "the School District"), and ANTHONY RAY

---

[1]. Plaintiffs use her initials as a survivor of sexual assault, and while a minor. She supplements it as Jane DOE I, as it's expected there will be other victims who step forward. Her full name will be given to Defendants.

BUSHONG; Individually and as an Employee of City View Independent School District; DARYL FRAZIER, Individually and as an Employee of City View Independent School District; RUDY GLYNN HAWKINS, Jr., Individually and as an Employee of City View Independent School District and ROBERT EVAN MORRIS, Deceased, Individually and as a former Employee of City View Independent School District (collectively hereinafter referred to as the "School District Defendants), and does hereby state and allege as follows:

## I. <u>INTRODUCTION AND STATEMENT OF THE CASE</u>

1.    Bobby Morris, now deceased was a former teacher and coach at the City View Independent School District.  Over the course of a number of years Morris abused his position and sexually assaulted a number of young female students including Jane Doe I.  His actions were well-known to the School District Staff and School Board Members named in this lawsuit, as well as others, but each person failed to address Morris' proclivities.  In fact, each person not only 'turned a blind eye' to Morris' sexually abusing female students, but actually threatened individuals like Doe I with retaliation.  Taken together these Defendants helped maintained a conspiracy of silence which of course permitted the sexual assaults by Morris to continue over many, many years.

2.    Accordingly, Doe I files this case against the City View ISD and Morris for violations of her Constitutional Rights including her right to be free from unnecessary, excessive and unreasonable restraints as contemplated by the 4th Amendment.  Additionally, constitutional claims against all Defendants for violations of her rights pursuant to the Equal Protection and Due Process Clauses of the 14th Amendment of the United States Constitution; *see also* 42 U.S.C. Section 1983.  Additionally, see seeks similar claims against the Individuals

Defendants as more fully described below.   Specifically, the same acts and omissions rise to the level of a *Civil Conspiracy* and a violation of the *Racketeer Influenced and Corrupt Organizations Act* ("RICO"), 18 U.S.C. 1961-1968 among these individuals.  Moreover, Doe has a claim against the School District for discrimination based upon sex pursuant and sexual harassment and assault pursuant to 20 U.S.C. § 1681-1688 ("Title IX").  Last, Doe also has state and common law claims for *Assault and Battery* against Morris, and a claim of *Negligence Per Se* against Bushong, Frazier and Hawkins.

## II.  <u>JURISDICTION</u>

3.     Jurisdiction is conferred upon this Court pursuant to 28 U.S.C.A. §1331 and 1343 because the matters in controversy arise under the constitution and laws of the United States.

4.     In addition, jurisdiction is conferred upon this Court pursuant to 20 U.S.C. §1681-1688, Title IX of the Education Amendments of 1972, et seq., and the federal regulations issued thereunder.

5.     This Court also has supplemental jurisdiction over various state and common law claims pursuant to 28 U.S.C. § 1367.

## III.  <u>VENUE</u>

6.     All or a substantial part of the events or omissions giving rise to this claim occurred in this district. Accordingly, venue lies within this district, pursuant to 28 U.S.C. § 1391(b)(2).

## IV.  <u>THE PARTIES</u>

7.     Plaintiff Jane Doe ("Doe") is a female individual and citizen of the State of Texas. As of the time of filing of this complaint, Doe is older than eighteen (18) years of age and lives in the Wichita Falls Catchment area.

8.      Defendant City View Independent School District ("CVISD" or "City View ISD") is formed

under the Constitution, statutes, and laws of the State of Texas. Specifically, City View ISD

is established under the Texas Education Code. City View ISD is tasked with serving the

education needs of more than 70,000 students in and around City View, Texas. City View

ISD receives federal funds. It may be served by and through its current Acting

Superintendent, Carrie Allen, at the District's central office at 1600-A City View Drive,

Wichita Falls, TX 76306; 940-855-40420 [Telephone].  Plaintiffs reasonably believe that

Attorney Craig Wood, with the Law Firm of WALSH GALLEGOS TREVIÑO RUSSO &

KYLE P.C., 1020 NE Loop 410, Suite 450 San Antonio, Texas 78209; (210) 979-6633

[Telephone]; (210) 979-7024 [Facsimile]; State Bar No. 21888700, cwood@wabsa.com

[Email] will accept/waive service for this Defendant.

9.      Defendant Anthony Ray Bushong is sued in his individual capacity. He recently served as

Superintendent at the City View ISD High School.  Plaintiffs reasonably believe that

Attorney Jamie-Lee Denton, with the Law Firm of Fox Rothschild, LLP; 2501 Harwood

Street, Suite 1800, Dallas, Texas 75201-1613. (972) 991-0889 [Telephone]; (972) 404-0516

[Facsimile]; jdenton@foxrothschild.com [Email] will accept/waive service for this

Defendant.

10.     Defendant Daryl Frazier is sued in his individual capacity. He is the former Principal at the

City View ISD High School. Plaintiffs reasonably believe that Attorney Craig Wood, with

the Law Firm of WALSH GALLEGOS TREVIÑO RUSSO & KYLE P.C., 1020 NE Loop

410, Suite 450 San Antonio, Texas 78209; (210) 979-6633 [Telephone]; (210) 979-7024

[Facsimile]; State Bar No. 21888700, cwood@wabsa.com [Email] will accept/waive service

for this Defendant.

11.    Defendant Rudy Glynn Hawkins, Jr. is sued in his individual capacity.  He works at the City View ISD and he too may be served at his place of business noted above. Plaintiffs reasonably believe that Attorney Craig Wood,  with the Law Firm of WALSH GALLEGOS TREVIÑO RUSSO & KYLE P.C., 1020 NE Loop 410, Suite 450 San Antonio, Texas 78209; (210) 979-6633 [Telephone]; (210) 979-7024 [Facsimile]; State Bar No. 21888700, cwood@wabsa.com [Email] will accept/waive service for this Defendant.

12.    Defendant Robert Evan Morris ("Morris") was a teacher and basketball coach at City View High School and was an employee of City View ISD. He is deceased and the estate may be served once such information is made public.  Alternatively, Plaintiffs reasonably believe that the Honorable Craig Wood, Attorney with the Law Firm of WALSH GALLEGOS TREVIÑO RUSSO & KYLE P.C., 1020 NE Loop 410, Suite 450 San Antonio, Texas 78209; (210) 979-6633 [Telephone]; (210) 979-7024 [Facsimile]; State Bar No. 21888700, cwood@wabsa.com [Email] will accept/waive service for this Defendant.

## V.  <u>FACTUAL ALLEGATIONS</u>

A.    ABOUT CITY VIEW INDEPENDENT SCHOOL DISTRICT

13.    City View Independent School District is a public school district based in Wichita Falls, Texas (USA). Northwestern portions of Wichita Falls are served by the district, as well as a small section of Pleasant Valley.  The School Board has developed policies and procedures regarding sexual harassment of students.

14.    For instance FB-EQUAL EDUCATIONAL OPPORTUNITY is a legal policy that prohibits discrimination on the basis of sex as contemplated by Title IX of the Educational Acts of

1972. 20 U.S.C. §1681 et seq.  The local policy appoints a Title IX Coordinator to investigate allegations of sexual harassment, absue and/or discrimination based upon sex.  At the time of tis writing the School Board website evidences that Tony Bushong, Superintendent is also the Title IX Coordinator.

15.   A related legal policy and procedure called FFF- STUDENT WELFARE: STUDENT SAFETY contemplates that when an educator is alleged to have physical, sexual or involved in a romantic relationship with a student, a number of things mus occur.  The student's parents' must be notified and told about the result of an investigation into the matter by the School Board's representative, the Title IX Coordinator and whether or not the teacher was reported to the State Board for Education For Certification (SBEC) for their actions, as they should.

16.   Legal Policy FFG STUDENT WELFARE CHILD ABUSE AND NEGLECT addresses the affirmative duty each professional has to report suspected child and sexual abuse to the local Child Protective Services or Police as required by Texas Family Code Section 261.201.  The local school board policy notes that the failure to do so violates Board Policy, can be a crime unto itself, subject the person to disciplinary actions including reporting to SBEC..  Importantly a person who is a recipient of such information cannot coerce or suppress someone from reporting.

17.   Legal Policy FFH- STUDENT WELFARE FREEDOM FROM DISCRIMINATION, HARASSMENT, AND RETALIATION is a very lengthy policy that contemplates much of the above.  Most importantly, it sets out a very specific investigatory process, the rights of the student and parent during the process, record keeping, remedies that the School Board

Original Complaint                                                                                                          6

should provide a victim a number of what are termed 'supportive measures' and remedies, as well as rights of an appeal of an unfavorable decision for the alleged victim and the right to be free from coercion and retaliation.

B.    ABOUT JANE DOE I

18.    Jane Doe I ("Doe I") was born on February 7, 2002. She started at the City View High School for the Fall of 2016 semester and graduated in the Spring of 2020.  During the time she was a student at the City View Independent School District she had intimate sexual contact Robert Morris, a teacher and coach innumerable times starting when she was merely fourteen years old.  Morris told Doe I he loved her almost everyday over the course of many years and not surprisingly, emotionally damaged Doe I because of the sexual and emotional relationship attachment that developed.

19.    Doe I played flute and clarinet and was in band in high school and hoped to continue that effort in college, but the relationship with Morris derailed that hope.  She is now a single mother, struggling and working hard to support herself and her child.

20.    As the facts below will show, numerous School District Officials and Board Members knew about Morris' proclivities but did nothing about it, letting Doe I and other female students to be victimized.  Even worse, when these Defendanst learned of the sexual abuse by Morris, they attempted to cover it up and threatened Doe I and others, if they did.

B.    THE SEXUAL ASSAULT OF DOE I BY ROBERT EVAN MORRIS

21.    Doe I lost her birth mother in October of her freshman year in 2016 and the wound was "very, very fresh."  Morris took advantage of it.

22.  On one early occasion Morris took her phone after she was caught texting her father and told her to see him after class. Doe I reports she was going to tell her something like "... hey, you have to write this essay. Hey, you have to do a report, write sentences. Don't do it again," "No, it was, 'If you want this back, you have to kiss me on the cheek.' And I was like, why? And he's like, if you want your phone back, you're gonna have to kiss me on the cheek." Doe I did so but Morris told her, "No, you're gonna have to kiss me for longer than that." Doe I thought she would just close her eyes, but "whenever I went to lean in, he turned and kissed me on the lips."

23.  After that Morris asked her to meet him after school and she went.  Morris said he had missed her and started to grab her waist, and then he slid his hand into her lower back pocket. Doe I was convinced she was the only one receiving this kind of attention and enjoyed being loved by someone.

24.  Even though she was barely fifteen by then Morris told Doe I he loved her, and would leave his wife and children for her.  On one occasion he said "... I truly do love you like, this isn't just a high school flame."

25.  They would communicate by snapchat.  But one night, on the anniversary of her mother's death, Morris asked her to meet him.  He said 'You've been good.' ... 'I know I can trust you. So I want to have sex.'  So Morris took Doe I into the truck and they had sexual intercourse. Even so, he told Doe I if she said anything to anyone he would fail her.

26.  Doe I continued having sex with Morris through the end of her junior year and beginning of the senior year when she wanted to end the relationship.  They had sex before school but usually after, and sometimes from seven to ten times per week.

27.     Morris told Doe I that he loved her every day for over three years. Finally, by the time she was a senior, Doe I tired of the relationship. They got into this huge argument and he kept trying and grabbing Doe I and saying over and over "Are you going to tell? Are you going to tell? Are you going to tell?' ... please don't tell anyone, this can't get back to my family."

28.     Doe I spoke to the School Principal Frazier and Superintendent Tony Bushong and told them everything. Bushong asked 'Does anybody else know about this?' And Doe I answered 'No' and Bushong commented that 'Well, I know his family. They're good people.'' He also said, ".... If this gets out, you will be expelled."   Bushong also commented that if she said anything, her own family would be embarrassed.

29.     Frazier told her not to speak to anyone about it ever again. He threatendedn that if she di, her reputation would be ruined.   She took it as a veiled threat he would 'blackball" her from college.

30.     Doe I was scared to report it to anyone after that.  She was getting ready to plan for college and was in band.  Some people were reaching out to her asking to hear her play and thought if she did, it could ruin everything that she was working so hard for. After that Morris continued in his advances throughout her senior year.

31.     In fact, at that point Morris was over her grade and threatened he would fail her if she said anything.  Also "So if you don't do as I say your grade will drop and it will fail you" ... and "I love you, and I want to be with you ..."  She lived in fear he would corner her and molest her again which continied until she graduated high school. But she bravely refused.

32.     After graduating high school in 2020, Martin tried to move on. After years of self-blame, she began to forgive herself.

33.   On June 23,2022 Morris was named a coach of the year. On social media related to that award, a number of former students made claims of sexual misconduct of the teacher/coach with them. Following those public disclosures, on June 27 the teacher/coach committed suicide. Shortly thereafter local law enforcement began an in-depth investigation.

C.   THE SEXUAL ASSAULT OF FEMALE STUDENTS BY MORRIS AND THE COMPLICITY OF A NUMBER OF SCHOOL DISTRICT OFFICIALS

34.   In summary, the police investigation revealed that no reports of any sexual misconduct by Morris was ever made to law enforcement or the Department of Family * Protective Services ("DFPS") by School District Administrators, Board Members or Staff with the City View ISD.. As a result, no law enforcement investigation before the one started in mid-2022 had ever previously been conducted into the teacher/coaches' sexual misconduct with students. From this investigation, it appears that the City View ISD's Administrators', Board Members or Staff's persistent failure to make such legally required reports of information they possessed about the possible sexual misconduct enabled Morris to have continued access to students from 2014 until 2022 and continue sexually assault minor female students during this period innumerable times.

35.   Four specific incidents of reporting were uncovered during the investigation. Two came to the attention of School Officials on or about the 2014 to 2015 school year and the others during the 2017 to 2018 school years. In both of these reported incidents a friend of the student victim, first came forward and voiced their concern about the allegations their friend was in a sexual relationship with Morris, to school officials.

36.    In 2014 Rudy Hawkins was Assistant Athletic Director and learned in December of allegations that Morris had sexual contact with a female student.   There was a meeting with Frazier and Morris and the record reflects Morris was put on Administrative Leave. A School Counselor Cindy Leaverton was present. According to both State Law and School Board Policy & Procedure both Hawkins and Leaverton had a duty to make a report to the DPFS or police and neither did so.   The Police Investigation found the failure to report by each constituted a continuing violation permitting Morris to continue having access to female students all the way to 2022.   When interviewed by the Police Leaverton said the prevailing belief at the time was tat nothing happened.   nevertheless, she was skeptical and warned an incoming new Principal, Frazier about Morris.

37.    The other two incidents were brought to the attention Daryl Alexander Frazier, School Principal at that time and others on about the 2018 school year by the victims themselves, one being Jane Doe I, Plaintiff in this cause.   A document was completed with very specific language about the sexual contact between Morris and the students.   Hawkins was aware of these allegations.   So was Vice-Principal Carrie Allen. According to state law and School Board Policy & Procedure Farzier and Allen, as did Hawkins again, all have a duty to make a report to the DPFS or police and did not. The Investigation found a continuing violation by Frazier and Hawkins permitted Morris to continue having access to female students all the way to 2022.

38.    In May of 2018 evidently a School Board member learned of the allegations against Morris and brought his concerns to Tony Bushong, Superintendent and Title IX Coordinator.   A

friend A.R.[2], of two victims spoke with Bushong, and the others noted above.  Notes of the meeting were kept but no formal reporting to relevant DFPS or Police Officials were made, nor were any School Board or Title IX Investigatory actions taken. When interviewed one of students named S.B.[3] also reported that both Bushong and Frazier told her not to tell anybody.  A.R. reported that each commented they were friends with Morris and family, went to Church together, and that speaking more about the allegation would affect his wife and children.

39.    Doe I said it started small.  While in class alone Morris would kiss her. He would eventually start taking her phone out of her back pocket and then make her stay late after class. She remembered telling him that it had to stop and that she wasn't going to do it anymore. Morris told her that he was going to take her phone away to the office if I didn't and that he would fail her.  At some point she went to the office and told Bushong and Frazier everything and they told her not to tell anybody."

40.    After Doe I and others spoke with Frazier and Bushong in 2018 Morris continued to have sexual intercourse with Doe I and did sexually harass her until she graduated in May of 2020. Over the course of a few years they could have sexual intercourse even daily.

41.    When Morris committed suicide and social media erupted Doe I learned for the first time how wide spread the sexual assault of other female students had gone and more importantly, that it had been covered up over the course of eight years.

---

[2].  This student's full name will be provided to Defendants.

[3].  The student's full name will be provided to Defendants.

42.   Doe I was interviewed and made a public statement that she was too scared to talk about what happened to her because she was scared she would be expelled if she brought it up any further.  While in high school she received some interest from Midwestern State University but was unable to follow up. She continues to experience severe depression and anxiety and takes psychotropic medications.

43.   A former School Board Member, Mike Parker has stated that many people in the School District knew that Morris was having sexual contact with underage female students.  In fact it was all well-known Morris was having adulterous relationships with female staff members as well but the School Board never acted.

44.   After Morris committed suicide the word finally got out that Morris sexually and emotionally abused Doe I and others. Doe I gave and interview to the local press.  Shortly thereafter, Doe I received a letter from Bushong pressuring her not to speak any further on the topic, just like he had done previously.

F.     THE FAILURES OF THE SCHOOL DISTRICT AND STAFF

45.   The City View  Independent School District failed to and refused to do any and all of the following in relation to the allegations that Morris emotionally and exploited Doe I, sexually harassed her, and sexually abused her.

46.   The School District did not investigate Doe's allegations, or anyone else's for that matter against Morris, commensurate with Title IX regulations, relevant Title IX jurisprudence, U.S. Department of Education, *Office of Civil Rights* Guidelines, the Texas Family Code, Texas Penal Code and the School Board Policies and Procedures.

47. Specifically when a staff member receives a complaint from any person or is aware that a student may be a victim of bullying, harassment, exploitation, sexual harassment or sexual assault by anyone, including and especially a teacher, the District must:

    a.    First, let other parents know of the investigation;

    b.    Reduce it to writing and give the complaint to the School Districts' Title IX Coordinator, or that person's designee;

    c.    Have the Investigator complete the investigation in ten days;

    d.    Assure that all witnesses be interviewed;

    e.    That all statements be reduced to writing;

    f.    That a written report be completed;

    g.    That the investigation be impartial;

    h.    The family is to be provided a copy of the final report;

    i.    If the family is unhappy with the findings, they must be given information about the right to appeal the findings through the School District's Internal Grievance Policies; and

    j.    In addition and in any case, the family is to be given information about filing a complaint with the United States Department of Education's *Office of Civil Rights.*

48. It did none of these things.

49. The School District also has a duty to provide an intervention for the victim based upon a constellation of all the facts. For instance the School District may offer the student who was victimized any of the following:

    a.    Counseling;

b.      Reimbursement for out-of-pocket costs for counseling;

c.      Psychological testing;

d.      Social skills training and/or

e.      Self-advocacy training;

f.      Referral to community resources;

g.      A one-to-one paraprofessional to provide monitoring of the Victim;

h.      Monitoring and discipline of the Perpetrator;

i.      Removal of the Perpetrator from the environment;

j.      Putting the Perpetrator on an improvement plan, if warranted; and

k.      An increase in supervision at "hot spots."

50.      It did none of these things..

51.      Further, even after an investigation is completed, the School District must have a system in place to assess how well or how poorly were the effectiveness of interventions provided, if any.

52.      Had the City View  ISD Defendants taken the appropriate steps to stop Morris at any step along the way, Doe I would not have suffered the factual and legal injuries noted herein. Instead the City View Independent School District had a pattern, practice and custom of *turning a blind eye.*

## VI.  STATE ACTION

53.      Doe re-alleges and incorporates by reference the paragraphs stated above as fully stated verbatim herein. Moreover, each section and paragraph below likewise incorporates by reference as if fully set forth herein, the ones above it.

54.  The City View ISD Defendant and Defendant Morris, in his Individual Capacity, in any and all matters were acting under color of state law when they subjected Doe to the wrongs and injuries set forth herein.

### VII.  UNCONSTITUTIONAL UNWRITTEN POLICY, PRACTICES & CUSTOMS

55.  Plaintiff contends that the School Board of the City View School District had a number of written policies and procedures to protect Doe I from emotional exploitation and sexual harassment from a teacher with the School District.  Such policies and procedures are intended to protect Doe I's constitutional rights.  These policies and procedures were based upon well-developed and settled federal caselaw, federal rules, directives from federal executive agencies like the *Office of Civil Rights* with the United States Department of Education, directives from the National and Texas Association of School Boards, Texas Law, Texas Rules and Ethical Standards for educational professionals.

56.  Nevertheless, the School Board fostered and permitted an environment whereby School District Officials 'turned a blind eye" to allegations that Doe I and others were victims of sexual abuse, failing to follow School Board Policies.  Worse yet, the School Board not only permitted this custom and practice to take hold but actively participated in the efforts to cover up such sexual assaults.  Further, there developed a custom and policy to threaten victims and complainants with retaliation if they pursued the issues even further.   These customs and practices rise to the level of deliberate indifference and a violation of the *Due Process Clause* Fourteenth Amendment of the Constitution of the United States, for which Doe I seeks recovery pursuant to 42 U.S.C. §1983.

57.    In addition and in the alternative, the record also reflects the School Board failed to assure staff were correctly *supervised* on fulfilling the above-noted policies and procedures, such failures and refusals also rising to the level of deliberate indifference thereby and a violation of the *Due Process Clause* Fourteenth Amendment of the Constitution of the United States, and for which Doe I seeks recovery pursuant to 42 U.S.C. §1983.

58.    In addition, and in the alternative to the above the School District had a actual practice and custom of failing to correctly *train* staff members in regard to reporting allegations that a student was a victim of sexual exploitation and/or sexual harassment, such failures injuring Doe I thereby and giving rise to her claim for violation of her rights pursuant to the *Due Process Clause* Fourteenth Amendment of the Constitution of the United States, for which she seeks recovery pursuant to 42 U.S.C. §1983.

## VIII.  <u>OTHER CONSTITUTIONAL CLAIMS</u>

59.    42 U.S.C. §1983 protects a student at a public school from violations of their federally protected rights. In the instant case Doe I had her constitutional rights in the following manner and particulars.

A.    RIGHT TO BE FREE FROM RESTRAINT

60.    Plaintiff contends that the acts and omissions of the Defendant Morris violated her right to be free from unreasonable and unnecessary restraints pursuant to the Fourth Amendment of the Constitution of the United States for which she seeks recovery pursuant to 42 U.S.C. §1983.

B.    RIGHT TO PRIVACY, BODILY INTEGRITY AND LIBERTY INTEREST

61.     Plaintiff contends that the acts and omissions of Defendant Morris violated her right to physical privacy and life, liberty and the pursuit of happiness, pursuant to the Fourteenth Amendment of the Constitution  of the United States for which she seeks recovery pursuant to 42 U.S.C. §1983.

62.     Moreover, not only did Defendants' Bushong, Frazier and Hawkins have a duty under state law to report Morris for child abuse and sexual abuse of Doe I, but coupled with their own professional duty not to cover it up such abuse, or thwart the reporting of such abuse they each had the requisite control over Morris' continued employment, such that the 'failures to report' also rise to the level on a constitutional tort and separate claim against each pursuant to 42 U.S.C. §1983.

C.      EQUAL PROTECTION CLAIM

63.     Plaintiff contends that the acts and omissions of Defendant Morris, Bushong, Frazier and Hawkins and the School District violated her right to *Equal Protection* under the law, pursuant to the Equal Protection Clause of Fourteenth Amendment of the Constitution of the United States for which she seeks recovery pursuant to 42 U.S.C. §1983.  Specifically, that Doe I was not provided the same level of safety as provided male students.  Further and in addition, that that Morris preyed upon her because she was a female and not a male both violating her right to equal protection thereby.

## IX.  **CONSPIRACY**

64.     The acts and omissions of each Individual Defendant including Bushong, Frazier and Hawkins, in refusing to report Morris for the sexual abuse of minors like Doe I, and by covering up such assaults, and intimidating and threatening Plaintiff and others, rise to the

level of a civil conspiracy. Such a meeting of the minds was for an unlawful purpose. Further each committed an overt act in furtherance of such objectives and Plaintiff suffered an injury as a proximate result of such conspiracy violating 42 U.S.C. 1985 [Conspiracy To Interfere With Civil Rights] thereby.

## X. <u>VIOLATIONS OF THE RACKETEER INFLUENCED AND CURRUPT ORGANIZATION ACT</u>

65.    Doe I further alleges, in addition and in the alternative to the above, that the acts and omissions of each Individual Defendant, in refusing to report Morris for the sexual abuse of minors like Doe I, and by covering up such assaults, and intimidating Plaintiff and others, rise to the level of a violation of the *Racketeer Influenced and Corrupt Organizations Act* ("RICO"),18 U.S.C. 1961-1968.  Specifically, and in addition to the above, such acts and omissions were an enterprise to commit the offense of hiding criminal activity, the sexual assault of minor female students like Doe I, and an intimidation of silence and used local and long-distance phone calls, facsimile and electronic transmissions in the course of interstate commerce to promote this and other unlawful activities, in violation of Title 18, United States Code, Section 1952. The enterprise was developed and intended to use the monies provided by the federal and state government for educational purposes.

66.    The enterprise committed mail and wire fraud by submitting claims and reports to the Texas Education Agency and thereby implicitly represented that they were operating in accordance with federal and state law when they were not. The fraud and conspiracy can be found on each annual form submitted to the Texas Education Agency that it was acting in accord with

federal and state laws regarding the duty to report the of sexual abuse by a staff person, and did not. Plaintiff suffered an injury as a proximate result of such enterprise.

## XI. <u>VIOLATION OF TITLE IX; 20 U.S.C. §1681 BY DEFENDANT CITY VIEW ISD</u>

67. Federal law provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.] 20 U.S.C. § 1681.

68. City View ISD and its schools receive federal financial assistance and funds.

69. Morris treated Doe I differently on the basis of her female sex. Specifically, Morris targeted Doe and abused her mentally, physically, and sexually because she was a young female.

70. Every City View ISD Official named in this Complaint had supervisory power over Morris.

71. Every City View ISD Official named in this Complaint also had actual knowledge of Morris's abusive and predatory proclivities, his preying upon the emotional frailties of young female students like Doe I, and the risk posed to young female students like Doe I.

72. They placed Doe I in harm's way when they were deliberately indifferent to this knowledge and evidence deliberate indifference to Doe I's rights under Title IX.

73. The conduct of the City View ISD Defendants directly resulted in Doe I's loss of equal opportunity to participate in City View ISD and City View High School educational programs, based on her female gender.

74. Moreover, the School District Officials were not only deliberately indifferent to the sexual assaults Doe I experienced, but actively participated in its coverup and thwarted the ability

of Doe I and others, studednts and staff, to report to the abuse to the relevant legal authorities.

75.   As a direct and proximate result of the School District Defendant's deliberate indifference and reckless disregard to Doe's rights pursuant to Title IX, as enunciated above, she has suffered both bodily injury and mental anguish.

## XII.  COMMON LAW CLAIMS

A.   ASSAULT, BATTERY AND SEXUAL ASSAULT

76.   Defendant Morris is liable to Doe I for the unwanted touching, assault, battery and sexual assault of Doe I.  Such liability is predicated upon the common law and violations of Chapter 261 of the Texas Family Code and Texas Penal Code, Section 22.04.

B.   NEGLIGENCE PER SE

77.   The Individual Defendants noted above, Bushong, Frazier and Hawkins failed to follow the requisites of 18 U.S.C. §2258 and Chapter 261 of the Texas Family Code that they report allegations of sexual harassment and assault of an underage female student, including Doe I by Morris, to the Texas Department of Family & Protective Services or local police department and did not.  Moreover, such Defendants also permitted an injury to a child, as contemplated by Texas Penal Code, Section 22.04.

78.   Moreover, Morris had a statutory duty to not sexually underage female students, but also a duty to self-report under SBEC standards of care for teachers. Such failures by each individual rise to the level of a claim of *negligence pe se.*

## XIII.  RATIFICATION AND RESPONDEAT SUPERIOR

79.   The City View ISD School Board ratified the acts, omissions and customs of Bushong, Frazier, Hawkins and Morris, and other School District Personnel and Staff.

80.   In addition and in the alternative, the City View ISD is responsible for the acts and omissions of all Staff Persons who were otherwise responsible for the safety of Doe I pursuant to the theory of *Respondeat Superior*.

## XIV.  PROXIMATE CAUSE

81.   Doe re-alleges and incorporates by reference the paragraphs stated above as fully stated verbatim herein.

82.    Each and every, all and singular of the foregoing acts and omissions, on the part of the School District, taken separately and/or collectively, jointly and severally, constitute a direct and proximate cause of the injuries and damages set forth herein.

## XV.  STATUTE OF LIMITATIONS

83.   Doe I was born on February 7, 2002.  She turned eighteen years old on February 2, 2020. Doe continued to be sexually harassed and intimidated by Morris up to and through her graduation from the City View High School in May of 2020. Doe I reasonably believes the Defendants may argue all or part of her claims are barred by a particular statute of limitations.

84.   In anticipation of such an affirmative defense she notes her claims related to what's termed *heightened risk liability* under Title IX were tolled until she learned that the School District Officials participated in the coverup which was just after his suicide in June of 2022.

85.   Moreover and in a related vein, because Bushong, Frazier and Morris all acted to intimidate Doe I and thwart her right and ability to file a complaint, all her claims including those

related to Title IX are tolled by the common law theory of *equitable tolling*.  Defendants' cannot benefit from their own deceitful conduct.

86.     Moreover, Doe I has a common law claim of *negligence per se* against Bushong, Frazier, Hawkins and Morris and benefits from the tolling theories enunciated in Texas Civil Practices & Remedies Code Chapter 16.0045.

## XVI.   SPOLIATION

87.     Plaintiff hereby requireS and demand that each Defendant preserve and maintain all evidence pertaining to any claim or defense related to the assault or other violations that make the basis of the complaint and the damages resulting therefrom, including statements, photographs, videotapes, audiotapes, surveillance, security tapes, business or medical records, incident reports, telephone records, emails, text messages, electronic data/information, and any other evidence regarding the violations set forth herein.

88.     Failure to maintain such items will constitute "spoliation" of evidence, which will necessitate use of the spoliation inference rule- an inference or presumption that any negligent or intentional destruction of evidence was done because the evidence was unfavorable to the spoliator's case.

## XVII.   DAMAGES

89.     Doe I has suffered injuries and damages, which she they may seek compensation thereby, all within the jurisdictional limits of this court, including but not limited to the following:

a.      Nominal damages;

b.      Past physical pain and suffering;

c.      Future physical pain and suffering;

d.      Past mental anguish and costs related to sexual assault;

e.      Future mental anguish and costs related to sexual assault;

f.      Past emotional anguish and costs related to intimidation tactics and harassment;

g.      Future emotional anguish and costs related to intimidation tactics and harassment;

h.      Past medical expenses;

i.      Future medial expenses;

j.      Loss of enjoyment;

k.      Loss of opportunity;

l.      Loss of economic opportunities;

m.      Out-of pocket costs in the past;

n.      Out-of pocket costs in the future;

90.   As a direct and proximate result of the Defendants' conduct, Doe I has suffered injuries and damages, in which she may seek compensation thereby, all within the jurisdictional limits of this Court.

91.   Moreover, Doe I may recover treble damages as contemplated the RICO Act.

92.   Further, Doe I may recover exemplary damages against each Defendant for their willful, purposeful and malicious acts noted herein.

93.   Doe I is otherwise entitled to recover all other damages available to her at law or in equity or both.

94.   The damages are joint and several.

### XVIII.  CONDITIONS PRECEDENT

95.   Doe I re-alleges and incorporates by reference the paragraphs stated above as fully stated verbatim herein. All conditions precedent have occurred or have been performed.

## XIX.  ATTORNEYS' FEES

96.   Doe I is entitled to recover from defendants her reasonable and necessary attorneys' fees, costs, and expenses (including expert fees) for the preparation and prosecution of this action under 42 U.S.C. §1983 and 1988 against the School District Defendant and Morris, and also against the School District for violations of Title IX, for their conduct, all as more fully described above.

## XX.  LEAVE TO AMEND

97.   Doe I reserves the right to amend this Complaint as indicated by the law and as the facts dictate.

## XXI.  JURY DEMAND

98.   Plaintiff Jane Doe I requests a trial by jury as described in Rule 38 of the Federal Rules of Civil Procedure.

## CONCLUSION AND PRAYER

**WHEREFORE PREMISES CONSIDERED**, Plaintiff Jane Doe I prays that defendants be summoned to appear herein and answer; further plaintiff prays and requests that upon trial by jury, this Honorable Court enter a judgment and order against Defendants, jointly and severally, for all money damages available for Defendants' violations, including actual and punitive and treble damages, attorneys' fees, costs, and expenses; pre- and post-judgment interest at the maximum rate permitted by law; cost of court; and such other and further relief as the Court deems just and proper whether it be at law, or equity or both..

Respectfully submitted,

/s/ Martin J. Cirkiel
Mr. Martin J. Cirkiel, Esq.
State Bar No.: 00783829
Fed ID No.  21488

Cirkiel Law Group, P.C.
1901 E. Palm Valley Boulevard
Round Rock, Texas  78664
(512) 244-6658 [Telephone]
(512) 244-6014 [Facsimile]
marty@cirkielaw.com [Email]

Mr. Justin A. Hill, Esq.
Hill Law Firm
445 Recoleta Rd.
San Antonio, Texas 78216
(210) 960-3939 [Telephone]
(844) 404-4455 [Facsimile]
Justin@jahlawfirm.com [Email]
www.jahlawfirm.com
service@jahlawfirm.com [Service Email]

ATTORNEYS FOR PLAINTIFF
JANE DOE I